[No. 25582. Department One. July 12, 1935.]

WEBB-McDONALD TRACTOR & EQUIPMENT COMPANY, *Appellant,* v. GOODFELLOW BROS., INC., *et al., Respondents.*[1]

[1]Reported in 47 P. (2d) 30.

*Roberts, Swanson & Tunstall* and *Hughes & Hughes,* for appellant.

*J. C. Bolinger,* for respondents.

BEALS, J.—Goodfellow Bros., Inc., a corporation, one of the defendants herein, was engaged in the construction of certain roads under contract with Chelan county, also a defendant in this action. United States Fidelity & Guaranty Company, a corporation, was named as a defendant, as surety upon the contractor's bond. Sampson, Hohner & Malone, Inc., a corporation, also a defendant, took subcontracts from Goodfellow Bros., Inc., calling for the performance of some of the road work covered by the main contract. Plaintiff, Webb-McDonald Tractor & Equipment Company, a corporation, a dealer in machinery, including road-making equipment, had been negotiating with Sampson, Hohner & Malone, Inc. (hereinafter referred to as Sampson), for the sale of an "Ateco Dirt Mover," which plaintiff desired to sell and Sampson desired to buy at an agreed price of $1,250. Plaintiff, however, required a down payment which Sampson was unable to make.

Prior to March 15, 1933, H. D. McDonald, representing plaintiff; J. A. Sampson, representing Sampson; and James Goodfellow, representing Goodfellow Bros., Inc. (hereinafter referred to as Goodfellow), met at plaintiff's office to discuss the situation. Mr. Goodfellow refused to guarantee payments to be made by Sampson under any agreement to purchase the Ateco, but stated that his company would pay the freight on the machine to Pateros, near which town work was to be commenced. Mr. Goodfellow testified that, to his knowledge, it was not at any time intimated that plaintiff might rent the Ateco to Sampson; the only negotiations which he knew anything about were upon the

basis of a sale of the machine, and that, upon this understanding, he agreed to advance the freight thereon, the payment to be charged to Sampson. We agree with the trial court in holding that the evidence shows that no officer of Goodfellow had any knowledge of the rental agreement hereinafter referred to until after all the work called for by the road contracts had been completed.

After the meeting of the parties above referred to, plaintiff and Sampson entered into the following agreement concerning the use of the Ateco:

"Wenatchee, Wash., March 15, 1933.

"It is hereby agreed that the firm of Sampson-Hohner and Malone rent from the Ateco Mfg. Co. and Webb-McDonald Tractor & Equipment Co. for at least a period of three months one Ateco Dirtmover Model No. S-35. For the stipulated rental of $200.00 per month. It is further agreed if the equipment is purchased on or before the period of ninety days has expired the rental paid shall apply on the purchase price. It is further agreed that in case the equipment is returned, transportation will be paid both ways from the factory to Pateros."

Work under one subcontract let by Goodfellow to Sampson was completed, no claim being made for use of the Ateco thereunder. Work under a second subcontract was fully performed, and thereafter plaintiff filed a statutory claim against Goodfellow and its bond in the sum of $1,100, for five and one-half months' rent of the Ateco at two hundred dollars a month. This claim, while filed within the statutory time, was not called to Goodfellow's attention until after it had finally settled with Sampson, its subcontractor.

At some time after the date of the agreement above set forth, plaintiff agreed to sell the Ateco to J. A. Sampson, individually, agreeing to give Mr. Sampson credit on the price of the machine for the net amount

realized on its claim against Goodfellow. Plaintiff's claim not being paid, this action was instituted, and from a judgment dismissing the action, based upon findings to the effect that plaintiff had no claim for lien, the transaction between it and Sampson being in fact a sale instead of a contract of rental, plaintiff has appealed.

The trial court found expressly that appellant sold the Ateco to Sampson for $1,250. Appellant bitterly assails this finding, and argues that it is against the preponderance of the evidence. It is clear that the preliminary negotiations between appellant and Sampson were upon the basis of a purchase of the machine by Sampson. On cross-examination, in response to a question as to whether or not he had called on Jack Goodfellow and requested him, on behalf of his corporation, to make a down payment upon the machine for the benefit of Sampson, Mr. McDonald answered: " I believe I may have. That is entirely possible, that I did ask him that."

We agree with the trial court that the evidence preponderates in favor of the theory that the only discussion between appellant's officers and the officers of respondent Goodfellow (hereinafter referred to as respondent) was upon the basis of a sale of the machine to Sampson. It is also clear that no attempt was made to collect any rental for the machine while it was engaged in carrying out the first road contract, or until after the completion of the second contract and final settlement between respondent and Sampson.

Appellant claimed $1,100 rental for the use of the machine which it wanted to sell for $1,250. It admitted a credit on the sale contract to Mr. Sampson of $181, so its claim for rental actually exceeded the balance due from Mr. Sampson on the purchase price. As the trial court remarked in summing up the evidence, if

appellant in this action establishes its claim, the Ateco is sold exactly as appellant originally planned to sell it, only it is sold to an officer of Sampson individually instead of to the corporation, which, it appears, had meanwhile become insolvent.

We are satisfied that appellant would have no claim against respondent or its surety if the indebtedness from Sampson to appellant was based upon a sale and not a rental, and, indeed, the case seems to have been tried upon that theory.

Appellant now argues that, because respondent under its contract with the county was bound not "to let, assign or transfer" the contract without the board's written consent, and because the contract further provided that any subcontractor should be considered the agent of respondent and that the contractor should be responsible "for all work and material furnished and any indebtedness incurred by such agent," respondent is now liable to appellant. Assuming, for the sake of argument, that, as to the second contract, respondent established some relation between it and Sampson which should have been approved by the board of county commissioners, we cannot hold that this would change the situation between appellant and respondent in any way so as to make respondent liable for the purchase price of material sold to Sampson. The question then turns upon whether or not it should be held that the evidence preponderates against the findings of the trial court.

Referring to one of the preliminary conversations between himself and Mr. McDonald, Mr. Sampson testified:

"Q. What, in substance, was the agreement made that day? A. Why, we were trying to buy this equipment, and we were trying to get Goodfellow Brothers to advance a down-payment on it, and James Good-

fellow said it was out of the question, so Mr. McDonald and I and Mr. Goodfellow talked it over, and Mr. McDonald and I finally agreed,—or Mr. McDonald agreed,—to ship us the equipment on a rental basis, providing Goodfellows would pay the freight. Q. While Jim Goodfellow was there, was any mention made of a rental deal on the equipment? A. Well, I believe there was, in this way: That it was to be shipped as rental until we made the down-payment, at which time the contract would be changed. That is as near as I remember. It couldn't be a sales contract, Mr. McDonald said, unless he did get this down-payment.''

The trial court was of the opinion that the evidence preponderated in favor of the proposition that the agreement between appellant and Sampson was intended by both parties to be a sale of the equipment, and that the writing above quoted, purporting to rent the Ateco to Sampson, coupled with the subsequent conduct of the parties, was insufficient to establish appellant's claim for rent, and that the entire record required the entry of judgment dismissing the action.

Examination of the record convinces us that it cannot be held that the judgment of the trial court should be reversed. The case is one in which the good faith of the parties constitutes an important element, and the trial court had the benefit of seeing and hearing the witnesses, which, of course, in such a case entitles his opinion on the facts to great weight. Appellant's evidence appears to us, as it did to the trial court, extremely unsatisfactory.

We conclude that appellant failed to prove that it was entitled to the relief which it sought, and the judgment of dismissal entered by the trial court is accordingly affirmed.

MAIN, TOLMAN, HOLCOMB, and GERAGHTY, JJ., concur.